## WHITEHEAD v. STEVENS.

No. 4898.    Opinion Filed October 5, 1915.

Rehearing Denied November 9, 1915.

Second Petition for Rehearing Denied December 28, 1915.

(152 Pac. 445.)

**EQUITY—Maxims of Equity.** He who asks equity must do equity. Where, in an action to foreclose a mortgage, it appears that one of the defendants had purchased the mortgaged property and assumed the payment of the mortgage, and he files a cross-petition in a foreclosure action, setting up that the mortgagee is estopped by a former judgment, but is nevertheless harassing him with actions, and asking that his title be quieted, the mortgage canceled, and the mortgagee restrained from bringing any further actions thereon, but he makes no offer to pay what is justly due on the mortgage, **held,** the trial court committed no error in refusing him such affirmative relief.

(Syllabus by Devereux, C.)

*Error from District Court, Hughes County;*
*John Caruthers, Judge.*

Action by Elizabeth Stevens against James E. Whitehead. Judgment for plaintiff, and defendant brings error. Affirmed.

This appeal is prosecuted from the district court of Hughes county, Okla., in which court the defendant in error, Elizabeth Stevens, was plaintiff in both actions hereinafter mentioned, and will, for the purpose of this opinion, be styled the plaintiff, as she appeared in the court below. The plaintiff in error, James E. Whitehead, was a defendant in both actions below, and will be styled the defendant. On October 8, 1910, the plaintiff filed a petition in the district court of Hughes county to foreclose a mortgage on certain real estate located in Hughes

county. The defendants in that case included the plaintiff in error in the present case. The petition in that case alleged, in substance, that defendants Marks and wife, on the 17th day of March, 1904, executed their promissory note to one D. H. Stevens, and gave the mortgage sought to be foreclosed to secure it; that D. H. Stevens, for value, assigned the note and mortgage to the plaintiff; that the note was past due and unpaid; and that the other defendants claimed an interest in the land. To this petition certain of the defendants answered by way of verified general denial, and also pleaded another suit pending, but this latter defense is now eliminated from the controversy. When this case came on for trial, the following journal entry was duly signed and entered of record:

"Upon this the 29th day of March, 1911, the same being one of the regular judicial days of the March, 1911, term of this court, comes on this cause for hearing upon its merits, the plaintiff being present by her attorney, E. L. Graves, the defendants beng present by their attorney, James E. Whitehead, and each side announcing ready for trial, and the reporter being called, the plaintiff offered her evidence, to the introduction of which evidence the defendants objected, and the court, after hearing the said objection and being well and sufficiently advised in the premises, sustains the said objection, and the said evidence is excluded. Thereupon plaintiff announced that she had nothing further to offer, and closed her case. Whereupon the defendants asked judgment. It is therefore by the court considered, ordered, and ad· judged that this cause be dismissed for want of proof to sustain the allegations of the plaintiff's petition.

"JOHN CARUTHERS, *Judge*."

Afterwards, on June 14, 1911, the plaintiff filed another suit based on the same cause of action, and against

the same defendants, and praying for the same relief. To the petition in the second action defendant James E. Whitehead filed his separate answer and cross-petition, duly verified, which pleaded: First, a general denial; second, judgment in the first answer as *res judicata*, and—

"that the plaintiff, Elizabeth Stevens, is filing numerous and sundry actions against these defendants in this court, declaring upon her unjust indebtedness and her illegal mortgage, and thereby harassing, annoying, and molesting these defendants; that the said plaintiff is joining in each of her successive actions all the tenants of this defendant, and molesting this defendant in the quiet and peaceable occupation and enjoyment of his property; that the said plaintiff is causing this defendant to pay out large sums of money in traveling expenses, attorney fees, and costs of court, in her successive actions, and that unless she is hereafter perpetually enjoined from filing upon said alleged indebtedness and said alleged mortgage, the said plaintiff will continue to harass, molest, and disturb this defendant in the quiet enjoyment of his said property; that the said plaintiff is a nonresident of this state, and this defendant cannot make the said plaintiff respond in damages for her unjustifiable actions."

On this cross-petition the defendant, Whitehead, prays judgment that the plaintiff herein, her attorneys, her agents, employees, and all other persons acting by, through, under or for the said plaintiff, be perpetually enjoined from forever hereafter filing any suit to recover judgment upon the notes set forth and copied in her said petition, and that she be perpetually enjoined from seeking to foreclose the mortgage copied and set forth in her said petition, from making claim against the property described in the said mortgage, from attempting to take possession of the said property or asserting right, title,

or interest therein, either verbally or in writing, from executing any instrument of writing that would cloud or incumber the title to said property, or from doing any acts or deeds whatever that would again assert title to the said property under and by virtue of the said alleged mortgage. To this answer a verified reply was filed, but it is not necessary to set it out. When the case was being tried, the plaintiff dismissed her petition without prejudice, and the case was tried on the answer and cross-petition and reply, and a judgment was rendered, denying Whitehead the affirmative relief asked, from which judgment he brings the case to this court by petition in error and case-made, and assigns as error: (1) The trial court erred in rendering judgment in favor of the plaintiff and against this defendant at the trial upon defendant's cross-petition; (2) the trial court erred in overruling motion for a new trial filed by this defendant.

*James E. Whitehead, pro se.*

*Charles B. Mitchell* and *Curtis M. Oakes,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above). The question presented by this case is, Did the trial court err in refusing to give the plaintiff in error affirmative equitable relief when she did not offer to do equity by paying what was justly due on the mortgage? It appears that Whitehead purchased the equity of redemption in this property from the mortgagor, Marks, after the mortgage was given and recorded, and that he assumed its payment and actually paid a portion of the mortgage debt. By this cross-petition Whitehead is now asking affirmative relief; that the plaintiff be enjoined from ever filing any suit in this state to recover

on the note, or from foreclosing the mortgage, and from ever asserting any right, title, or interest in the property under the mortgage, and that the note and mortgage set out in the petition be canceled as a cloud on his title. But the cross-petition makes no offer to do equity by paying any sum the court may find legally and justly due to the plaintiff. This cross-petition is nothing but a bill of peace under the former practice, when the legal and equitable remedies were administered in separate tribunals.

"A bill of peace is filed for securing an established legal title against the vexatious recurrence of litigation, whether by a numerous class insisting on the same right, or by an individual reiterating an unsuccessful claim." (Adams, Eq. 406 [199]; 2 Story, Eq. Jur. [13th Ed.] 172, sec. 853.)

When it is remembered that plaintiff had dismissed her petition, and that the case was tried on the cross-petition and reply, it is manifest that the defendant, Whitehead, was invoking affirmative, equitable relief, and he has not offered to do equity by paying what was legally due on the note and mortgage. In 8 Ency. U. S. Sup. Ct. Rep. 313, it is said:

"When a party comes into a court of chancery seeking relief, he is bound to do justice, and not ask the court to become the instrument of iniquity. It is true that one who asks no favors need grant none. But if he calls upon a court of chancery to put forth its extraordinary powers and grant him purely equitable relief, he may, with propriety, be required to submit to the operation of a rule which always applies to such cases, and do equity in order to get equity. The maxim has been applied by the courts in decreeing specific performance; in setting aside a defective conveyance, or an invalid mortgage; in

canceling a land patent; in setting aside a sale of land, including a judicial sale; in granting relief from a usurious .contract, or a contract for the payment of money which is part invalid; in appointing a receiver; and in enjoining ejectment proceedings, or the collection of a tax."

In *Thomas v. Brownville, etc., R. Co.,* 109 U. S. 522, 3 Sup. Ct. 315, 27 L. Ed. 1018, stockholders of a railroad company attacked a mortgage given to obtain funds for the construction of the road, on the ground that there was fraud in the construction contract, and therefore the mortgage was for an excessive amount. The court held that, as the stockholders were asking equity, they must do equity by paying to the bondholders the reasonable costs of the construction of the road. See, also, *Tiffany v. Boatsman Institution,* 18 Wall. 375, 385, 21 L. Ed. 868; *Porter v. Pittsburg Bessemer Steel Co.,* 120 U. S. 649, 673, 7 Sup. Ct. 1206, 30 L. Ed. 830. In *Hubbard v. Tod,* 171 U. S. 474, at page 501, 19 Sup. Ct. 14, at page 24 (43 L. Ed. 246), the court say:

"Apart from, these considerations, the circuit court disposed of this contention on the ground that petitioner, in order to [obtain] any relief in equity, would be compelled to pay the sums advanced and interest, but had not tendered or made any ′ offer of payment. This assumed that the point might have been passed on, if there had been such tender or offer, notwithstanding the Trust Company was not a party to the contract of loan, and neither the Bridge Company, nor Garretson, nor any member of the syndicate, nor the Debenture Company, nor any other loanholder, was a party to the record. We think the court was right if the question was properly before it. This was not a proceeding to enforce an alleged usurious agreement, but it was petitioner who sought the affirmative aid of equity, which he could only obtain by doing equity."

This being an action of purely equitable cognizance, we are at liberty to examine the evidence (*Schock v. Fish,* 45 Okla. 12, 144 Pac. 584; *Wimberly v. Winstock,* 46 Okla. 645, 149 Pac. 238, and *Checote v. Berryhill,* 48 Okla. 696, 150 Pac. 679); and we are satisfied that when Whitehead purchased this property, the amount of the mortgage which he assumed, and part of which he has paid, was taken into consideration, and that he only paid the mortgagor owner the difference between the amount of the mortgage and the value of the property. To allow him now to have this mortgage canceled, and the holder enjoined from foreclosing it, would be to ask the court "to become an instrument of iniquity." It is apparent that the plaintiff in error was seeking the affirmative aid of a court of equity, and the trial court was right in refusing its aid, until he did equity.

What we have said does not conflict with that class of cases which hold that the rule does not apply to a party setting up purely defensive matter, and not asking any affirmative aid from the court. In *Fosdick v. Schall,* 99 U. S. 235, on page 253, 25 L. Ed. 339, it is said:

"The mortgagee has his strict rights which he may enforce in the ordinary way. If he asks no favors, he need grant none. But if he calls upon a court of chancery to put forth its extraordinary powers and grant him * * * equitable relief, he may with propriety be required to submit to the operation of a rule which always applies in such cases, and do equity in order to get equity."

In the case at bar the defendant, by his cross-petition, as we have shown, is asking equity. Nor are the authorities applicable which hold that the rule does not apply where a party is not seeking equity, but only to

avail himself of a substantive right given him by the statute. *Missouri v. Krumseig*, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474, is an illustration of the last class of cases. In that case the statute provided that a borrower in cases of usury was entitled to relief without being required to pay any part of the usurious debt or interest, as a condition to relief. Even with this statute in force the Circuit Court of Appeals for the Eighth Circuit held that the borrower must do equity by paying the debt, with legal interest, before relief would be granted him, on the ground that the equity jurisdiction of the United States court cannot be modified by any state statute, but this was reversed, the Supreme Court saying (172 U. S. at page 358, 19 Sup. Ct. at page 182 [43 L. Ed. 474]):

"We think it is a satisfactory reply to such a proposition that the complainants in the present case were not seeking equity, but to avail themselves of a substantive right under the statutory law of the state."

In the case at bar the defendant is not asserting any right given him by statute, but is invoking the general jurisdiction of a court of equity to remove a cloud from his title, and to enjoin the plaintiff from further proceedings to foreclose her mortgage.

It appears that the judgment of the trial court was the proper judgment to render under the facts before him, and the foregoing discussion renders a further consideration of the assignments of error unnecessary.

We therefore recommend that the judgment be affirmed.

By the Court: It is so ordered.